UNITED STATES of America,
Plaintiff,

v.

CERTAIN PARCELS OF LAND IN ING-
HAM COUNTY, MICHIGAN, Edward
F. Solomon, et al., and Unknown Own-
ers, Defendants.

Misc. No. 152.

United States District Court
W. D. Michigan, S. D.

Sept. 15, 1964.

George E. Hill, U. S. Dist. Atty., Grand
Rapids, Mich., for plaintiff.

Raymond Joseph, Lansing, Mich., for
defendants.

FOX, District Judge.

This is a civil action brought by the
United States of America at the request
of the Federal Highway Administration,
for the taking of property under the
power of eminent domain.

The proposed taking is by authority of
the Act of Congress approved August 1,
1888 (25 Stat. 357; 40 U.S.C. § 257),
the Act of February 26, 1931 (46 Stat.
1421; 40 U.S.C. §§ 258a to 258e), and
the Act of August 27, 1958 (72 Stat. 892;
23 U.S.C. § 107), authorizing the ac-
quisition of land or interests in land re-
quired in connection with the construc-
tion, reconstruction, or improvement of
any section of the National System of
Interstate and Defense Highways.

Defendants own two parcels of land
situated off the proposed route of the
highway, and the land admittedly will be
used only for the purpose of providing
material for the construction of the high-
way.

Defendants object to the taking as
being arbitrary and capricious, and plain-
tiff has moved for a summary judgment.

The question as posed by the defend-
ants, is one on which scant authority, if
any, exists. In essence, it is this: is
the condemnation of property in fee sim-
ple absolute for the purpose merely of
being a source of fill, palpably to save
additional costs which would be incurred
if fill were purchased commercially, ar-
bitrary and capricious and, therefore,
invalid?

The authorities are clear that the
condemnor can enter adjoining land and
condemn materials required for construc-
tion. 29 C.J.S. Eminent Domain § 66, p.

856, and cases cited; 2 Nichols on Eminent Domain, § 7.5121, p. 710, and cases cited. The question here is whether the condemnor can take more of an interest, in this case, a fee simple absolute, than it will use. There are two cases which stand as authority for the proposition that it can.

In United States ex rel. TVA v. Vogle, 28 F.Supp. 454 (W.D.Ky., 1939), thirty-three acres were taken in a dam project, defendant alleging that the real purpose of the taking was to obtain construction materials for the dam. The court there based its decision on the reasoning that it had no authority to review the decision of the TVA to take the land, inasmuch as the purpose of the project was a public one, and the TVA had decided under the authority delegated to it that the land was necessary for the carrying out of that purpose.

This seems to be a misapprehension of the judicial power in cases of this kind, for if the decision were clearly arbitrary and capricious, there would be power to overturn the administrative decision. The case is cited at 29 C.J.S. Eminent Domain § 66 for the proposition that *materials* on adjoining lands may be condemned by the constructing authority, although the case itself held that the land in its entirety could be taken.

Following the rationale in that case, the trial judge added the following:

"There also appears to be authority to support the general proposition that the right to condemn land for a public purpose carries with it the right to condemn adjoining lands * * * for obtaining materials for use in the construction of the contemplated project, and for other incidental purposes." (Authorities.) Id. 28 F.Supp. at 455.

An examination of those authorities shows that in the one case cited, there was a statute authorizing the taking of earth from adjoining lands, and the other authorities stood for the proposition that material, not the entirety, could be condemned. Under scrutiny therefore, this case does not stand for precisely the point in the instant case, although it is some precedent.

A far more relevant case is that of Harwell v. United States, 316 F.2d 791 (CCA 10, 1963). In that case a tract was condemned as a source of stone in the construction of a dam, and reservoir. The statutory authority under which the Secretary of the Army acted in that case allowed condemnation of any "land or material" needed to "maintain, operate or prosecute" the projects in question. The language of the statute in this case allows condemnation of "any land or interest in land" required in the "construction, reconstruction or improvement" of the project.

In the Harwell case, the argument that the land was not acquired for a public use and that the power of condemnation was exercised in an arbitrary and capricious manner was rejected.

"In a condemnation proceeding, the court may determine whether the nature of the proposed use is public or private. But in the absence of bad faith, if the use is a public one, the necessity for the desired property or the expediency of appropriating it thereto is not open to judicial determination." Id. at 793.

On the precise point of condemning the entire fee for the taking of construction material, the court remarked:

"The acquisition of the land was desired for the purpose of enabling the private contractor who had the contract with the government to use the rock or stone thereunder for (construction of the dam); and that was the source of the rock or the stone used. The condemnation of land for such purpose was an appropriate means of effecting a public end and therefore the determination of the Secretary of the Army of 'need' therefor was well within the range of power delegated by the statute * * *." Id. at 793.

The Court has the power to determine whether a taking is in fact for

a public use. Shoemaker v. U. S., 147 U.S. 282, 13 S.Ct. 361, 37 L.Ed. 170 (1893); United States v. Certain Real Estate, etc., 217 F.2d 920 (CCA 6, 1954). Under the reasoning of the Harwell case, this taking would appear to be a valid public use. Defendants in their brief submit three meaningless cases on the question of whether or not this is a public use. The case of Old Dominion Land Company v. U. S., 269 U.S. 55, 46 S.Ct. 39, 70 L.Ed. 162 *found* a public use in a situation not at all similar to the one under consideration here; United States v. 16,747 Acres of Land, 50 F.Supp. 389, dealt with just compensation and in no way treated the question of public use; and the case of United States v. 6.87 Acres of Land, 52 F.Supp. 594, is another just compensation case.

Furthermore, defendants, in support of their contention that the proceedings here were arbitrary and capricious because of the availability of the earth on the commercial market, cite Brown v. Ashville Electric Co., 138 N.C. 750, 51 S.E. 62, 69 L.R.A. 631 (1905), a case which is cited in 29 C.J.S. Eminent Domain section 90 on necessity of a taking (to which the defendants also cite us). That section treats necessity as only a reasonable or practical necessity, combining the greatest benefit to the public with the least inconvenience and expense to the condemning party and property owner consistent with the taking. It is further stated there that mere economic considerations are not sufficient of themselves to find necessity. In support of that statement, however, only one case is adduced, the Brown case, supra, and a reading of it shows that the case dealt with an attempt to take trees with no compensation from the right-of-way of a power line. It was found that there was no necessity for the taking, and mere convenience would not sustain the action.

In further support of their contention, defendants cite the case of Sherman Mining Co. v. Smith, 54 Wash.2d 607, 343 P. 2d 735 (1959). This case distinguishes itself by calling attention to the fact that it is a case of taking for a private use,

and therefore, is not governed by ordinary condemnation proceedings considerations. Nor does it expressly deal with the question propounded by defendants.

The precise question of whether or not a purely economic motive will suffice to sustain a taking apparently has not been the subject of any case law or legal writing. However, that consideration must certainly be beneath the surface in both the Vogle and Harwell cases, supra, and those cases, on their facts, are express authority for the condemnation proceedings in this case.

In light of existing case law, therefore, especially the Harwell case, supra, the inescapable result is that the motion for summary judgment must be granted.